Thank you, Judge Fletcher and may it please the court, I'm Isabel Humphrey. I'm here representing the appellant in this case, Mackenzie Brown. I will watch the clock and attempt to reserve about three minutes for rebuttal. Because a reasonable trier of fact could easily find that Ms. Brown has produced evidence sufficient to prove her Title IX case, the district court erred by granting summary judgment in favor of the university. The case should be remanded for trial. From my perspective, a great deal of the legal confusion in this case is created by wandering away from the guidelines that are given to us by the Davis opinion and wandering into other theories that are explored by other courts but are not at issue in this case. The Davis court made it clear that federally funded cases should be held liable only for cases in which they become aware of a serious Title IX problem within a context that they control. They deliberately fail to address the situation and the plaintiff is harmed as a result. This, I'm sure the majority in Davis thought would be a clear, simple structure for liability, has been expanded by courts in other cases, including by the Ninth Circuit in the Karasek case. But our case, Mackenzie Brown's case, does not rely on any of those expansions of law that are in the other cases. The primary theory that is repeatedly returned to state that is not at issue in this case is what the Karasek court called the pre-assault theory and what other courts have often called the official policy theory. And under that theory, the university is potentially liable even if they did not have full knowledge of an actual Title IX violation within the context in their court. So that is definitely the Davis case. The way that I tend to think of the difference between these two approaches is that Davis liability arises when the university noticed that a bomb has gone off on campus and that potentially a bomber is going around planting more bombs and they need to take action to stop the bomb planter from planting bombs. In the official policy, or as the Karasek court called the pre-assault cases, the question is whether or not the university should have noticed the bomb sitting there before it went off. The reason this distinction is critical in our case is because the basis on which the district court judge ruled in favor of the university was on the theory that the university did not have substantial control over the context of the harassment in question. In the Davis, in the classic Davis cases, the question is whether the university had control over the context of what the Davis court called the known harassment. Ms. Humphrey, let me just ask you to try to understand your position on that. Let me ask you a hypothetical. Suppose that we had facts similar to those here, except that Mr. Bradford had graduated and so he commits all the misconduct and assaults that student. He's not punished. They don't do anything. Then he graduates and he's still in town and then commits an attack like the one on the plaintiff, who the plaintiff is a student. Would your position in that case be that there's a Title IX claim against the university because even though he's no longer a student, they don't have any control over him. They had control over him back when acts of known harassment occurred? Question, your honor, is the university had control over the harasser and the context of the harassment as to the acts that they are, the acts that form the basis for the alleged liability. However, and I point this out in brief, there is still a classic causation requirement. There is actually a causation requirement still in these cases. And so if plaintiff proves the Davis requirements, that the university had actual knowledge of actual harassment by this harasser in a context within control and they were deliberately in front of that, the plaintiff would still have to prove that that deliberate indifference bears a close enough connection to her harm to satisfy the ordinary requirements of causation. Sure, but I mean, assuming that causation could be shown, your answer then would be yes, that there is liability. I suspect that causation couldn't be shown is what I'm actually saying, your honor. I suspect that that would be a very difficult situation in which to show causation. I think that you would look at, you know, the time that had passed. I have not quite honestly thought about the situation where the university no longer has control over the harasser at the time of the incident. But I think that if there is a period of time where they no longer have control over the harasser, I don't understand how you could build a case for causation in that situation. Let me ask this, what if we flip it around? So you have a student who moves, transfers from one university to another. So at University A, he commits harassment. Then he transfers to University B, and he tells University B, I'm moving here because they asked me to leave University A because I committed all kinds of misconduct. And University B says, that's fine with us, we don't care. You're welcome to come here. And then he goes on and does something at University B. Would your position be, I mean, as I understand the logic of your position, the plaintiff who was injured at University B doesn't have a Title IX claim against University B, even though they were deliberately indifferent, because University B did not have control over the place where the acts of known harassment occurred, because the of the statute? Your Honor, under the official policy rubric, which the Karaset court called the pre-assault rubric, that plaintiff may well have a Title IX claim under the official policy rubric, would not have a Title IX claim under the Davis, under classic Davis claim. Under the official policy rubric, the question is when the bomb explodes, if the university should have noticed the bomb sitting there. And so the focus in an official policy case is on the, whether the university had context over the situation in which the bomb exploded. The known harassment in those kinds of cases happens after the time that they were requested to act. And Your Honor, this is not an official policy case. And, you know, I, frankly, I'm not sure that the United States Supreme Court would approve of those, that rubric if it gets up to them. So I would say, I think that that plaintiff has a claim in the Ninth Circuit at this time. So I guess where I'm going with both lines of questioning is, we don't read Supreme Court opinions as if they were provisions of U.S. code. And we have this passage in Davis that refers to the context in which the known harassment occurs, but isn't the more natural reading of that statement in the context of the opinion, just that they were making clear that the school has to know that there's harassment going on. They weren't trying to distinguish between, you know, at what time do you have to have control? They're saying that you have to control the harasser and you have to know about the harassment. Why isn't that a more natural way to read what they said? Your Honor, if you read the Davis opinion and also read the dissent, I think you'll see that the court as a whole, talking about the context of the known harassment, the entire reason for that restriction on Title IX liability was to make it fair to hold the university responsible for being deliberately indifferent to the harassment. You can take out the word known. The point is, they're talking about the harassment that the university was deliberately indifferent to. And so, if you're talking about a classic Davis case, if the allegations are that the university was deliberately indifferent to the harassment of student A and the other victim lying to the group, that's the context that you look at. Did the university have control over the context of that harassment that they're alleged to have had a duty to address? And if you're looking on the other hand at an official policy case where the harassment that occurs is the harassment they're being sued for is the first instance. And the question is, did the university have control over the context where that harassment occurred? Because that's the harassment that they're alleged to have had a duty to have looked at context and noticed that something was about to explode there. And so, it's fair, for example, if Mackenzie Brown had sued on an official policy claim and said that the university had substantial control over the off-campus homes of the football players, that would be a much more difficult case. That would be a much more difficult case because the question in an official policy claim is, if you look at where the harassment took place without any precedent for this harasser doing the same thing, was it reasonable to say that the university should have noticed that there was a bomb placed there that was about to explode? Does that make sense, Your Honor? Oh, yeah, thank you. Well, why don't we hear from the other side? You've got about two and a half minutes that you've saved. Thank you. Ms. Collings. Thank you. Good afternoon, Your Honors. May it please the Court. Claudia Acosta Collings on behalf of the Arizona Board of Regents and the State of Arizona. The question presented here is whether a student can properly establish a Title IX claim against the university for the physical abuse that she endured at the hands of another student, which occurred off-campus and in an environment over which the university exercised no control. The answer is going to be no. I'm sorry, I didn't mean to cut you off, but I know the answer that you would give. Let me ask you my version of a hypothetical, and that is that the university is on notice because of what happened to student A and to Ms. DeGroot of Mr. Brown and his risk to other students. And let's change the facts of this case so that in my hypothetical case, at the time where Ms. Brown is being assaulted, she's in another dorm on campus. Does she have a cause of action? It would be a stronger case for Ms. Brown, yes, Your Honor, because... You can say yes or no, or you can say I don't want to say, but I'm asking you does she have a cause of action, not whether she has a stronger case. Yes, because in this instance, or in your hypothetical, the assault would have occurred on campus in a dorm room where the university could control the comings and goings of its students. Okay, I've got another question that follows from that. We are told in the record that had the football coach or the football team people been alerted to Mr. Bradford's conduct, they would have terminated his ability to be off campus. They would have required that he come back onto campus. So had they known that, there would have been no possibility of an off-campus assault because he wouldn't have been off campus. What's that do to the case? Oh, that goes to the deliberate indifference standard, Your Honor. Well, but it also goes to the possibility of control. That is to say, they had control over where he lived and the known facts, that is to say, the assaults on student A and on Mr. DeGroote. We have undisputed evidence from the football people that had we not have been off campus. Right, but that goes to the actual knowledge argument, Your Honor, because the coaches didn't know about Bradford's alleged misconduct. Well, of course, and the reason they didn't know is that the other people in the university who did know didn't tell them. And I'm assuming for the moment that the other officials in the university who did know violated their duty. I'm just assuming that, and you can contest that if you like. For the moment, I'm assuming that they had an obligation to report that to the football team. Had they reported it to the football team, we're told, and I don't think there's any dispute about this, we're told that the football team would have immediately reacted and would have terminated his ability to live off campus. They might have done more than that. They might have kicked him off the team, which wouldn't have resulted in the expulsion. But for purposes of my question, I'm only hypothesizing that they would have forced him to give up his off-campus housing. Right, we would contest that there was an obligation by the Title IX officials to let the coaches know what Bradford was alleged to have been doing. But why don't they have an obligation to tell the coach? I mean, the coach has a huge amount of authority over Bradford, and you say they don't have to tell the Title IX officials are taking into consideration the facts that they hear from the victims. And in this case with student A, they respected her wishes. They counseled her. They gave her the information about the resources that were available to her. But student A refused to proceed with a code of conduct violation or a complaint. So there wasn't an investigation. There wasn't a complaint. And at that time, in say March 2016, student A denied that the black eye she received was from Bradford. She said that she was safe. But by the time we have the assault against the plaintiff here, we've also had the assault against Ms. DeGroote, isn't that correct? Well, that was what was reported by third-hand information from the students. Yes, Your Honor. And Ms. DeGroote actually wins in front of Judge Bolton in the sense of failure to respond appropriately. We then get a settlement, but we get a ruling out of Judge Bolton as to DeGroote. Well, that was on that one element, Your Honor. We would still be waiting to go to trial in that case if we had not settled. And then we would be delayed to appear in front of this court on the same issues that are raised here, Your Honor, especially on the control element. Can I go back to the line of questioning Judge Fletcher started with? Tell me if this assumption is wrong, but assuming that the university had the authority to, they could have told him, you're not allowed to live in off-campus housing anymore. If they had the ability to control whether he could be in off-campus housing, then why is it appropriate to view the off-campus housing as a place that was outside of their control? It sounds like that they could have controlled him by telling him he wasn't allowed to be there. Right, I mean, there's no dispute that there was control over Bradford as a student, as a student-athlete. Yes, the coach could have told him to come back on campus, but that control over that student does not transform that control into control over the context of the harassment. There is still a separate prong. There is a separate prong, one for the control over the harasser and one over control over the harassment. So just because the coaches could have done something had they known, that doesn't mean that the context, his abuse of Ms. Brown off-campus, where it wasn't, that it didn't occur in an activity at the school, it wasn't during football practice, it wasn't during weight training, it was at his private home, on his own time, out of school, because that harassment that occurred did not occur where the university could control it. That's why Ms. Brown's claim fails. What, in your view, is necessary for that second prong, the control over the context, which I gather is not quite the same maybe as control over the place? What does a plaintiff have to show to establish that kind of control? She has to establish that the university could control, had control over the activity that the harassment occurred under an education program or activity. So that would include whether it admissions or housing or at football practice, it could occur at a university supervised event, like a football camp, but because this occurred in Bradford's private home, where he wasn't being supervised by his coaches, he wasn't in school, he wasn't on a Zoom call for class, it wasn't controlled by the university. If I can go to the question about the known harassment, the known harassment that Ms. Brown relies on, that's referenced in Davis, that refers to the harassment that the university or the school had actual knowledge of. Actual knowledge is a separate control element. Brown's interpretation would conflate the actual knowledge requirement with the substantial control element, and it would collapse the two prongs into one, completely eviscerating the requirement under Title IX that there be a connection between the harassment and the school's operations. Could you elaborate a little bit on that? I'm not sure I fully understood what you just said. There has to be a connection between the harassment and the school's operations. Because in Davis, Davis went to the statute, the plain language of the statute. The statute requires that or prohibits sex discrimination under an education program or under the operations of the funding recipient. The harassment must take place in the context. So Davis actually confined the scope of prohibited conduct based on the degree of control over the harasser and over the environment or the operations or the activities that the harassment actually occurs. But stated at that level of generality, I'm not sure that gets you off the hook. That's a very high level of generality about context and control. Depending on how we define context, it's clearly within the context. So I'm not there yet. Give me some more help. Right. Davis is construing the plain language of the statute. The statute says that no person on the basis of sex shall be discriminated or shall be subjected to discrimination under any education program or activity. So Davis construed that language and limited a Title IX cause of action for peer harassment based on the amount of control the university had or the school has over the harassment. So and Davis is a nice, tidy, easy case. I mean, we just have just episode after episode after episode in which this young man is tormenting this young girl sexually. I mean, the real fight in Davis is whether or not the cause of action lay at all for peer on peer sexual harassment. And the court says, yes, on the facts of Davis, that's easy as can be. And then we get the test that Davis lays out, which is with the facts of Davis in mind. And this is, I don't know whether to say a step beyond, but it's a it's a different it's a different setting. So we've got to figure out what the court had in mind. Right. David Davis on his facts is not quite his case, of course. Well, this court or a panel of this court in an unpublished decision in Samuelson, which the district court would rely on below. Another panel affirmed the dismissal of the plaintiff's claim in that case. In that case, she failed to allege how the university exercised any control over the environment of her sexual assault. She was raped by a non-university student at an off-campus location that had no sponsorship or association with the university. And like here, the plaintiff in Samuelson claimed that the university's deliberate indifference to a prior report of sexual assault led to the deprivation of her educational opportunities. Well, as I'm sure you know, unpublished decisions are not binding on our panel, but I'll take it as a case that I need to take into consideration. I confess I didn't didn't read it. It's unpublished. But as you describe it to me, it's a non-student. It's a non-student. Who's the harasser? Well, here we have a student who's a harasser. Right. And we have a student who can be told you can't live off campus anymore if you have misbehaved sexually. Right. But the control element has two prongs. There's no dispute about that. And in Samuelson, it's true that it was an easier case because the harasser was a non-student. But the key point with Samuelson and Davis is that the control element is not a throwaway. It has two prongs and they both apply. And this court in an unpublished decision has thrown out a case or dismissed a case or affirmed the dismissal of the case based on the failure to have control over the context where where and how. That goes back to definition of context. I mean, if they don't have correct control over what happens in the house because it's not on campus, but they do have direct control over the student in many ways over Mr. Bradford, including the ability to tell him you can't live off campus anymore or the ability to exclude him from school. Right. And neither one of those things happened, even though the university was on notice that this was a bad actor. That goes to one element, one prong of the control element that does not establish that Ms. Brown was subjected to discrimination by the university. And that's because she was abused off campus, unrelated, without any connection to the university, except for the fact that it was one of her fellow students, except for the fact that he was a student. Right. And what what is the I mean, what in your view is the purpose of the second prong of the control test? I get why it makes sense that school shouldn't be held liable for the actions of somebody of a person who they didn't have authority to control. But why is it important that there be liability only when the school has control over the context? Why is that an independent element? The purpose of the substantial control element is to ensure that title nine liability remains constrained to the university's deliberate indifference, as opposed to holding the university liable for actions of a third party. But control over the person seems to cut off the third parties. Right. I mean, why isn't control over the person enough to do what you're saying? Oh, because it's it's per the plain language of title nine, your honor. And that was specifically laid out by by Davis when it's laid out the contours for us peer on peer harassment claim. Okay. And any any further questions from the bench? Okay, thank you very much. And, Miss Humphrey, you've saved some time. Thank you, Judge Fletcher. I would like to start with a hypothetical. I know this is kind of turning the tables. But there, suppose that the universe, instead of doing nothing in response to the known acts of harassment, suppose that the university had met with Orlando Bradford and said, Orlando, you can't do this on campus, you can't, we're going to be liable for it. You're a good football player, but we need you to strangle your girlfriends off campus. We need you to leave the dorm, make sure next one you strangle, do it off campus. This is how you know that there's a flaw in the argument that's being offered by the university. In that case, the causation element that that the university's deliberate indifference cause the plaintiff's harm would be very clear, and there would be no discussion over it. But the university wouldn't have context over the actual physical area of the ultimate harassment of the plaintiff. That's not the issue. The issue is, did they have control over the context of the harassment and over the harasser? In the case of the instances that they are alleged to have failed to act, in the case, in the instances that they're alleged to have acted with deliberate indifference for it. Nobody's saying that they were deliberately indifferent after Orlando Bradford nearly killed my client and was arrested and sent to jail. It's, that's not the harassment that alleged to have been early in this war. No, it's very clear that as soon as the university, as soon as the football team, people knew about it, they took immediate action. I mean, he kicked off the team, he's expelled from school, and he reported to the police, and he ends up in jail. No, once the football team learns of this, because your client has complained about it and brought this to the attention, bingo. It's all the stuff that happened or didn't happen before, of course. That's correct, your honor. And we had actually included a claim against the football team, a section 1983 claim, and then I took his deposition, found him incredibly credible, and we ended up dropping that claim. And I think that you're right on point about that. As soon as the football team knew, and as soon as the police knew, everything was handled. Yeah, okay. Any further questions on the bench? Thank you both very much for your helpful arguments. Brown v. State of Arizona submitted for decision.
judges: W. Fletcher, Miller, Hunsaker